

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NAOMI J. OSEI,

        *Plaintiff*,

v.                                  Civil Action No. 1:13-cv-1204

COASTAL INTERNATIONAL SECURITY, INC.

        *Defendant*.

## MEMORANDUM OPINION

### I. Overview

This matter comes before the Court on Defendant Coastal International Security's motion for summary judgment. Dkt. No. 32. The plaintiff filed her opposition, to which the defendant replied. The Court heard oral argument on October 24, 2014. Upon careful consideration of the pleadings and exhibits submitted by the parties, the Court hereby DENIES Defendant's motion for summary judgment (Dkt. No. 32) for the reasons set forth below.

### II. Background

This case arises out of an employment relationship between plaintiff Naomi Osei ("Osei") and defendant Coastal International Security ("Coastal"), a contractor providing private security guards for the federal government. At all relevant times, Osei worked as a security guard at the General Services Administration ("GSA") warehouse in Springfield, Virginia. Coastal was Osei's most recent employer, having taken over the GSA contract from her previous employer, American Security.

In April 2013, Osei was disciplined for failing to follow the proper procedures for handling state and national flags during a storm. She was also disciplined for failing to report a

1

sounding fire alarm to the Federal Protective Services control center. Osei refused to sign a written notice of these infractions. Coastal alleges that upon being presented with the notices by her supervisor Sonia Matthews, Osei "became irate" and "aggressively yell[ed]" at Matthews. Def.'s Mem. Supp. Mot. Summ. J. ("DMSJ") at 5. Osei was thereafter placed on administrative leave when Matthews claimed that she feared for her safety in light of Osei's allegedly violent response to the disciplinary notice.

On May 3, 2013, Osei's counsel sent Coastal a letter indicating that they believed Coastal's actions leading up to and surrounding her suspension constituted "a pattern of attempting to discourage Ms. Osei's exercise of [FMLA] leave...." DMSJ, Att. 12. Specifically, Osei alleges that in July 2012 she requested leave to administer albuterol to her daughter every four hours following a recent hospitalization. Matthews denied this request and, as a result, Osei did not take leave. In January 2013, Osei took leave to care for her then three year old daughter, who was hospitalized for more than a week at Inova Fairfax Hospital because of her severe asthma condition. Coastal treated this absence as excused. On March 31, 2013, just a few days prior to being disciplined, Osei requested leave to take her "coughing and wheezing" daughter to the Pediatric Lung Center. Osei Dep. 21:5–21:18. Matthews denied this request and Coastal treated her absence as unexcused.

On May 16, 2013, almost six weeks after Osei was placed on leave, Coastal's human resources director, Janice Simons, initiated an email correspondence with Osei in an attempt to "get her to come back to work." Simons Dep. 28:22–29:1. Through Simons, Coastal offered to reinstate her at one of its other locations. The positions offered to Osei were for part-time work on weekends. Osei and Simons proceeded to correspond back and forth over the available locations as well as the schedule and hours for each. The parties dispute whether Osei received

2

an email from Simons stating that Coastal had full-time opportunities available as well. They also dispute who is at fault for the tapering off of these communications. Osei has not worked with Coastal since her suspension in April 2013.

Osei's first amended complaint claimed Family Medical Leave Act ("FMLA") reprisal, wrongful termination, violation of the Virginia insulting words statute, and breach of her employment contract. On March 6, 2014, the Court dismissed all but the FMLA retaliation claim. Dkt. No. 23.

### III. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Finally, in making a summary judgment determination, the court must view the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

### IV. Discussion

Coastal has moved for summary judgment on the single count of FMLA reprisal remaining in Osei's complaint. The Court finds that resolution of the motion turns on two

3

issues: (1) whether Coastal was a successor in interest to Osei's previous employer, making her a FMLA "eligible employee"; and (2) whether a reasonable jury could find that Coastal took materially adverse action against Osei.

### A. Osei Is an "Eligible Employee" Under the FMLA and Therefore Able to Engage in Protected Activity.

To succeed on a FMLA retaliation claim, a plaintiff must make a prima facie showing that: (1) she engaged in protected activity; (2) her employer took adverse action against her; and (3) a causal connection existed between the protected activity and the adverse action. *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006). One must be an "eligible employee" entitled to FMLA's protections to engage in protected activity. *See Adams v. High Purity Sys. Inc.*, 1:09cv354, 2009 WL 2391939, at *7–8 (E.D. Va. July 2, 2009), *aff'd*, 382 F. App'x 269 (4th Cir. 2010) (dismissing FMLA claim because plaintiff had not alleged he was an "eligible employee"); *see also Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1275, 1276 n.8 (11th Cir. 2012) (holding that "a pre-eligibility request for post-eligibility leave is a protected activity"). The FMLA defines "eligible employee" as an individual who has been employed by the employer for at least 12 months and worked at least 1,250 hours during the previous 12 month period. 29 U.S.C. § 2611(2)(A).

Coastal asserts that Osei was not engaged in protected activity because she was not a FMLA "eligible employee" during the relevant periods. *See* DMSJ at 8. Osei argues that she was an "eligible employee" due to her reasonable belief that she was covered by the FMLA when she voiced her opposition to perceived FMLA violations and was retaliated against. Pl.'s Mem. Opp'n Mot. Summ. J. ("SJ Opp'n") at 16–20. Alternatively, she argues Coastal was a successor in interest to her previous employers at the same job site where she had worked for over two years, thereby satisfying the 12 months of employment required for FMLA eligibility.

*Id.* at 20–22. The issue of whether a plaintiff may state a claim for FMLA retaliation based on a reasonable belief she was covered by the FMLA appears to be an issue of first impression in this circuit. Because the Court agrees that Osei is an "eligible employee" pursuant to a successor in interest analysis, the Court finds it unnecessary, and therefore declines, to address the alternate "reasonable belief" theory that the plaintiff advances.

### i. *Coastal Is a Successor in Interest to Osei's Previous Employer.*

Federal courts have analyzed the successor in interest issue in FMLA cases using a three-part test that considers the equities of imposing a FMLA legal obligation on an employer. This test requires the reviewing court to consider: "(1) the interests of the plaintiff-employee, (2) the interests of the defendant-employer, and (3) the federal policy goals of the statute." *See, e.g., Grace v. USCAR*, 521 F.3d 655, 662, 672 (6th Cir. 2008). In balancing the interests of the employee versus the employer, courts have uniformly applied a Department of Labor ("DOL") regulation that sets out eight factors by which to determine whether an employee may tack on employment with a previous employer for FMLA eligibility purposes. *See, e.g., id.* at 676 (holding employee was FMLA eligible in part because eight factor analysis weighed in her favor); *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 783–87 (9th Cir. 2010) (applying eight factors from DOL regulation to aid successor-in-interest inquiry); *Rhoads v. F.D.I.C.*, 956 F. Supp. 1239, 1252 (D. Md. 1997), *rev'd on other grounds*, 257 F.3d 373 (4th Cir. 2001) (same). The regulation provides that an employer may be considered a successor in interest for purposes of FMLA employer liability as well as employee eligibility. 29 C.F.R. § 825.107. It specifically states:

> When an employer is a successor in interest, *employees' entitlements are the same* as if the employment by the predecessor and successor were continuous employment by a single employer .... A successor which meets FMLA's coverage criteria *must count periods of*

5

*employment and hours of service with the predecessor for purposes of determining employee eligibility for FMLA leave.*

§ 825.107(c) (emphasis added). The factors to be considered in making the determination, viewed under the totality of the circumstances, include: (1) substantial continuity of the same business operations; (2) use of the same plant; (3) continuity of the work force; (4) similarity of jobs and working conditions; (5) similarity of supervisory personnel; (6) similarity in machinery, equipment, and production methods; (7) similarity of products or services; and (8) the ability of the predecessor to provide relief. § 825.107(a)–(b). Regarding this last factor, most courts have held it to be irrelevant because, as in most FMLA leave cases, "[a] former employer cannot grant leave to a person no longer employed by it." *See, e.g., Sullivan*, 623 F.3d at 787. Whether an employer is a successor in interest is a question of law for the Court. *See id.* (granting summary judgment to employer after finding it was not successor in interest to previous employer for FMLA purposes); *see also Jolliffe v. Mitchell*, 971 F. Supp. 1039, 1042 (W.D. Va. 1997) (denying motion to dismiss after finding current Sheriff to be successor in interest to previous Sheriff and therefore liable to plaintiff for her FMLA claims); *Rhoads*, 956 F. Supp. at 1251–52 (denying defendant's motion for summary judgment after finding plaintiff was an "eligible employee" pursuant to its eight factor analysis).

Here, Coastal "took over the contract" from Osei's previous employer, American Security. Osei Dep. 9:21–10:15 (explaining how previous employer had "lost the contract" to Coastal). American Security had in turn taken over the contract from Osei's first employer on that site, DTM. Osei Dep. 10:3–10:12. Coastal, like her former employers, "provides private security guard services by contract to the federal government and others." *See* Am. Compl. ¶ 4; Answer ¶ 4 (admitted). Osei had worked as a security officer at the same site since December 2009. Osei Dep. 10:13–15. Coastal hired substantially the same work force from American

6

Security, including one of Osei's supervisors, Sgt. Sonya Matthews. Osei Decl. ¶ 2. The equipment and physical features of the work site, such as the desks, posts, closed circuit cameras, computers, weapons, and even uniforms, remained the same as before under American Security. *Id.* ¶ 3. Osei's tasks and supervisory structure remained the same. *Id.* Coastal also relied on a certification by American Security with respect to Osei's basic and firearms training. SJ Opp'n, Atts. 11 & 12. All of the above factors, viewed under the totality of the circumstances, weigh in Osei's favor, as her "employment was continuous, [her] responsibilities and duties were the same, and ...only the management, not the job, had changed." *See Grace*, 521 F.3d at 672 (internal quotation marks and citation omitted).

The overarching equitable considerations also support a finding of successorship in this case. A stated purpose of the FMLA is to grant long-term employees "reasonable leave for medical reasons," and to "balance the demands of the workplace with the needs of the family." 29 U.S.C. § 2601(b)(1)–(2). Particularly relevant to the facts of this case is the Sixth Circuit's conclusion that "declining to apply successor liability to companies competing for government contracts circumvents implementation of the FMLA." *Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 557 (6th Cir. 2006) ("Conceivably, a new company could be awarded the contract every time, preventing [employees] from ever qualifying for FMLA leave ...."). Moreover, Coastal has not identified any interest to justify a finding of no successorship. *Compare Grace*, 521 F.3d at 674–75 (rejecting defendant's argument that adverse finding on successorship issue would "compel the company to hire outside workers in the future instead of taking over existing contract workers" because defendant "benefitted from the stability and continuity created by the retention of long-term employees of its predecessor"), *with Sullivan*, 623 F.3d at 787 (holding that congressional purpose of having employees wait 12 months to obtain FMLA coverage in

7

conjunction with application of eight DOL factors favored finding of no successorship). Even if Coastal had cited *Sulllivan* to state that the 12-month requirement was a "legislative compromise to lessen the impact on employers," this interest alone does not tip the scales in its favor in light of the Court's finding that the DOL factors strongly support Osei, versus in *Sullivan* where the Ninth Circuit held that the employer was not a successor in interest due to the plaintiff's different job title and responsibilities as well as the store's new inventory, manager, and training methods. 623 F.3d at 787. In sum, a balance of the equities in this case, in light of the stated goals of the FMLA and in conjunction with the Court's analysis of the eight DOL factors, strongly weighs in favor of finding successorship with respect to Osei's FMLA eligibility.

Accordingly, because Coastal is a successor in interest to Osei's previous employer, it "must count periods of employment and hours of service with the predecessor for purposes of determining employee eligibility for FMLA leave." § 825.107(c). Because Osei had worked for Coastal's predecessors since December 2009[1]—significantly in excess of 12 months—she was an "eligible employee" and entitled to FMLA leave during all relevant periods, including when she was suspended on April 7, 2013. *See* DMSJ at 8, Att. 3. As a result, Coastal's claim—that Osei's letter opposing the alleged FMLA violations does not qualify as a protected activity because she was not an eligible employee—fails and summary judgment on this basis is denied.

---

[1] Although the record shows Osei worked for nearly two and a half years for Coastal's predecessors, the length of her employment with *each* predecessor employer is unclear. She stated that she was "hired by DTM, and they worked there for close to a year." Osei Dep. 10:6–10:9. She began working for DTM in December 2009. *Id.* at 10:11–10:15. Because her testimony indicates she worked for a year for either DTM or for American Security, her period of time with Coastal—over 11 months at the time of her suspension—is sufficient to make her FMLA eligible after tacking on, at the very least, a month of work from Coastal's predecessor, American Security.

8

*ii. Osei Should Not Be Precluded from Raising the Successor-in-Interest Theory in Her Opposition to the Summary Judgment Motion.*

In its Reply in support of its summary judgment motion, Coastal claims that Osei should be precluded from raising a successor-in-interest theory as to her FMLA eligibility because it would impose undue prejudice upon Coastal, which appears not to have conducted any discovery on the matter. *See* Def.'s Reply Supp. Mot. Summ. J. ("SJ Reply") at 4–6. Coastal asserts that Osei's Amended Complaint does not raise any facts regarding her past employers, nor does it allege that she is an "eligible employee" under the FMLA based on a successor-in-interest theory. *See* Am. Compl. In support of its prejudice argument, Coastal cites Fourth Circuit precedent to state that a district court can deny leave to amend a pleading to raise a new legal theory if discovery has closed and is based on information known to the party during discovery. SJ Reply at 4–5 (citing *e.g., Smithfield Foods Inc. v. United Food & Comm. Workers Int'l Union*, 254 F.R.D. 274, 279 (E.D. Va. 2008)).

Although it is true that Osei raised her successor-in-interest argument for the first time in her Opposition to the summary judgment motion, it is important to note that she is not seeking to amend the allegations in the amended complaint—namely, that she is an "eligible employee" under the FMLA. The cases cited by Coastal therefore do not apply. Moreover, the Fourth Circuit case cited by Coastal arguably supports Osei. In *Johnson v. Oroweat Foods Co.*, the Fourth Circuit suggested that a plaintiff's motion to add a new cause of action should be granted on remand based, in one respect, on the fact that "the merits of the proposed new cause of action...would have been substantially similar to the merits of the [originally pleaded] claim." *See Johnson*, 785 F.2d 503, 510 (4th Cir. 1986).

Here, Osei does not seek to add a new cause of action to her complaint. In the Amended Complaint, she states that she "was an eligible employee under the FMLA in that she met the

9

hours of service requirement…and…that defendant Coastal has employed more than 50 persons within a 75 mile radius of plaintiff's worksite." Am. Compl., ¶ 5. As discussed above, DOL regulations and relevant caselaw provide that periods of employment with a predecessor employer count for the purpose of determining whether an employee has worked the requisite 12 months and is therefore an FMLA "eligible employee." *Supra* section IV.A.i.

If Coastal took issue with Osei's pleading on the FMLA claim, it could have moved to dismiss the claim. *See* Def.'s Mot. Dismiss. Coastal instead chose to answer and demanded, on the issue of employee eligibility, "strict proof thereof." Answer, ¶ 5. Having identified the employee eligibility issue in its Answer, Coastal was free to conduct discovery on the matter to develop its defense and make it a part of the record. Coastal admits it never made these inquiries. SJ Reply at 2.

The issue before the Court, then, is not whether Osei adequately pleaded the employee eligibility element of her FMLA claim, but rather whether she has proffered sufficient evidence for the Court to conclude that she is in fact an "eligible employee" under a viable legal theory, including a successor-in-interest theory. *See Rhoads*, 956 F. Supp. at 1251 (holding that plaintiff had proffered sufficient evidence that she was an "eligible employee" on successor-in-interest theory after applying the eight DOL factors). Because the onus was on Coastal to determine whether it had any viable defenses to Osei's alleged FMLA eligibility and develop them through discovery, any prejudice it has suffered appears to be from its own failure to move to dismiss on this basis as well as from its failure to seek discovery on material issues. Discovery is now closed, and Osei has proffered sufficient evidence to support the Court's finding that Coastal is a successor-in-interest to her previous employer, thereby making her an "eligible employee" under the FMLA.

### B. A Reasonable Jury Could Find that Coastal Took Adverse Action Against Osei.

The second prong of the Fourth Circuit test for a FMLA retaliation claim requires Osei to make a prima facie showing that her employer took adverse action against her. *Yashenko*, 446 F.3d at 551. The Supreme Court and the Fourth Circuit have recently clarified that the adverse action must be material. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (holding adverse action element in Title VII retaliation cases requires plaintiff to show that "a reasonable employee would have found the challenged action materially adverse"); *Csicsmann v. Sallada*, 211 F. App'x 163, 168 (4th Cir. 2006) (applying the "materially adverse" standard from *White* to analogous FMLA retaliation claims). Adverse actions include, but are not limited to, "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *See Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999); *see also White*, 548 U.S. at 71–73 (upholding jury determination that reassignment of responsibilities and 37 day suspension without pay were materially adverse actions).

At issue here is whether Coastal's failure to return Osei to work following her suspension constituted termination or some other type of materially adverse action. Osei was suspended from work on April 7, 2013 following a report by her supervisor, Sgt. Matthews, alleging that Osei had engaged in workplace violence. DMSJ, Att. 3; Osei Dep. 41:22–42:18. Osei has not worked for Coastal since then. SJ Opp'n at 11–12. On May 3, 2013, Osei's counsel sent a letter to Coastal stating that its actions leading up to and surrounding her suspension indicated "a pattern of attempting to discourage Ms. Osei's exercise of [FMLA] leave...." DMSJ, Att. 12.

Following her counsel's letter to Coastal, Osei and Coastal's human resources manager, Janice Simons, corresponded back and forth regarding finding Osei a reassignment within the company. DMSJ, Atts. 13–16. On May 28, 2013, Simons sent a letter to Osei stating that she

11

was "still employed by the Company," and offering her two employment opportunities. DMSJ, Att. 14. In the letter, Simons advised Osei that if she failed to respond by June 7, it would be "considered a refusal to work." *Id.* Osei did respond on June 7, stating that a work site in "Springfield [o]r Alexandria, Virginia will be fine." *Id.*, Att. 15. Simons then responded on June 12, stating that Coastal had opportunities at the Veterans Administration ("VA") in Washington, DC, on nights and weekends; at the U.S. Geological Survey ("USGS") in Reston, Virginia; and at the FDA in Silver Spring, Maryland, also on nights and weekends. *Id.* Two days later on June 14, 2013, Osei wrote to Simons requesting the shift hours for those work sites, as well as the best time and day to call her. SJ Opp'n, Atts. 8– 9.

Simons' response to this last communication from Osei is disputed. Coastal claims that Simons sent an email to Osei on July 3, 2013, stating the previously offered work sites' shift hours: a part-time overnight weekend position at the VA and a part-time weekend position at USGS. DMSJ, Att. 16. Coastal claims Simons' email also indicated that Coastal had other full-time opportunities available in DC. *Id.* Osei has testified, and asserts in her response to this motion, that this last email from Simons was never sent. SJ Opp'n at 26; Osei Dep. 60:8–61:6. The next and last correspondence between the parties was Osei's counsel's letter dated July 5, 2013, forwarding a draft complaint of the instant action. DMSJ, Att. 17.

Viewing the facts in the light most favorable to Osei, the tapering off of Coastal's efforts to reassign Osei may very well lead a jury to conclude that she was terminated, which clearly constitutes a materially adverse action. *See Boone*, 178 F.3d at 255 (finding termination to be an adverse employment action in context of Title VII claims). Alternatively, a reasonable jury could conclude that the offers to reassign her to positions that would necessarily result in a significant pay decrease—by going from full-time to part-time work—constituted materially

12

adverse actions by Coastal. *See White*, 548 U.S. at 61–64 (holding Title VII's anti-retaliation provision was broader than substantive provision and thus not limited to employment-related actions, including those affecting compensation).

The question of which party stopped the communication over Osei's reassignment, leading to her alleged constructive termination, is a disputed issue of material fact that cannot be resolved upon summary judgment. Coastal's claim on this issue is therefore denied.

## CONCLUSION

Because the Court finds that Coastal is a successor in interest to Osei's previous employer, making her FMLA eligible, and because there are sufficient facts in dispute to support Osei's claim that Coastal took materially adverse action against her following her letter opposing the alleged FMLA violations, all of Coastal's asserted claims on summary judgment fail and the motion is DENIED.

November 19, 2014

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge